**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRACEY HOLLAND, VIRGINIA ERB MARQUIS, and DON ROWLETT, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>       v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD.,<br><br>              Defendants. | Civil Action No. 2:22-cv-01348-JMV-AME<br><br>Motion Return Date:  June 21, 2022 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION TO**
**COMPEL ARBITRATION, DISMISS PLAINTIFFS' CLASS CLAIMS,**
**AND STAY ALL PROCEEDINGS**

ARNOLD & PORTER
KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel.: 212.836.8000
Fax: 212.836.8689

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS .................................................................................. 2

    A.    Plaintiffs' Receipt of Their Phones and Agreement to Arbitrate ......... 2

    B.    Plaintiffs' Complaint ......................................................................... 8

ARGUMENT ....................................................................................................... 8

I.    Plaintiffs Entered into a Binding Agreement to Arbitrate the Claims They Are Asserting Against Samsung .......................................................... 8

    A.    Contract Formation Requires Reasonable Notice of the Terms and Conditions and of the Manner of Acceptance ............................. 10

    B.    Samsung Provided Reasonable Notice of the Arbitration Agreement, and Plaintiffs Assented to that Agreement, in Three Independently Sufficient Ways ........................................................... 12

        1.    Plaintiffs Entered Into Valid Shrinkwrap Arbitration Agreements ..................................................................... 12

        2.    Plaintiffs Entered Into Valid Arbitration Agreements Based on the Notice Inside the Box with Their Phones ........... 15

        3.    Plaintiffs Entered Into Valid Arbitration Agreements Through the Clickwrap Process During Device Activation ..................................................................... 18

    C.    The Agreement Assigns Questions of Scope to the Arbitrator, But in Any Event, the Claims Fall Within the Scope of the Arbitration Agreement ..................................................................... 21

        1.    The Arbitration Agreement Assigns Questions of Arbitrability, Including Scope, to the Arbitrator ...................... 21

        2.     Plaintiffs' Claims Fall Within the Arbitration
Agreement's Scope ................................................................23

II.    The Court Should Dismiss Plaintiffs' Class Claims ....................................25

III.   The Court Should Stay Proceedings Pending Arbitration............................26

CONCLUSION ........................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ADP, LLC v. Lynch*,
2016 WL 3574328 (D.N.J. June 30, 2016),
*aff'd*, 678 F. App'x 77 (3d Cir. 2017)..........................................................18, 19

*Air Line Pilots Ass'n, Int'l v. Midwest Exp. Airlines, Inc.*,
279 F.3d 553 (7th Cir. 2002) ...............................................................21

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)............................................................................25

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)............................................................................23

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)............................................................................25

*Awuah v. Coverall N. Am., Inc.*,
554 F.3d 7 (1st Cir. 2009)....................................................................22

*Bapu Corp. v. Choice Hotels Int'l, Inc.*,
2008 WL 4192056 (D.N.J. Sept. 8, 2008),
*aff'd*, 371 F. App'x 306 (3d Cir. 2010)...............................................22

*Begonja v. Vornado Realty Tr.*,
159 F. Supp. 3d 402 (S.D.N.Y. 2016) .................................................21

*Beture v. Samsung Elecs. Am., Inc.*,
2018 WL 4621586 (D.N.J. July 18, 2018) ......................................10, 18, 20, 21

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
584 F.3d 513 (3d Cir. 2009) ..................................................................9

*Chassen v. Fid. Nat'l Fin., Inc.*,
836 F.3d 291 (3d Cir. 2016) ..................................................................9

*Coiro v. Wachovia Bank, N.A.*,
2012 WL 628514 (D.N.J. Feb. 27, 2012) ............................................25

iii

*Davis v. Dell, Inc.*,
    2007 WL 4623030 (D.N.J. Dec. 28, 2007),
    *aff'd*, 2008 WL 3843837 (D.N.J. Aug. 15, 2008)................................................19

*Dye v. Tamko Bldg. Prods., Inc.*,
    908 F.3d 675 (11th Cir. 2018) ....................................................................13, 14

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018)..................................................................................8

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995)..................................................................................9, 10

*Frederick v. L. Off. of Fox Kohler & Assocs. PLLC LLC*,
    852 F. App'x 673 (3d Cir. 2021) ......................................................................10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019)..................................................................................20

*HomeAdvisor, Inc. v. Waddell*,
    2020 WL 2988565 (Tex. App. June 4, 2020)....................................................11

*Horowitz v. AT&T Inc.*,
    2019 WL 77331 (D.N.J. Jan. 2, 2019)...............................................................19

*In re Samsung Elecs. Am., Inc. Blu-Ray Class Action Litig.*,
    2008 WL 5451024 (D.N.J. Dec. 31, 2008).......................................................16

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
    298 F. Supp. 3d 1285 (N.D. Cal. 2018)............................................................24

*James v. Glob. TelLink Corp.*,
    852 F.3d 262 (3d Cir. 2017) ....................................................................*passim*

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
    560 F.3d 156 (3d Cir. 2009) ............................................................................10

*Kowalski v. YellowPages.com*,
    2010 WL 3323749 (D.N.J. Aug. 18, 2010) .......................................................15

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019)..................................................................................25

iv

*Litman v. Cellco P'ship*,
    655 F.3d 225 (3d Cir. 2011) ...............................................................................25

*Lloyd v. HOVENSA, LLC.*,
    369 F.3d 263 (3d Cir. 2004) ...............................................................................26

*Melo v. Zumper, Inc.*,
    439 F. Supp. 3d 683 (E.D. Va. 2020) ..................................................................11

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ....................................................................11, 18, 19

*Mucciariello v. Viator, Inc.*,
    2019 WL 4727896 (D.N.J. Sept. 27, 2019).........................................................19

*Neal v. Asta Funding, Inc.*,
    2016 WL 3566960 (D.N.J. June 30, 2016)..........................................................22

*Noble v. Samsung Elecs. Am., Inc*,
    682 F. App'x 113 (3d Cir. 2017) ..................................................................*passim*

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d. Cir. 1996) ...............................................................................22

*ProCD, Inc. v. Zeidenberg*,
    86 F.3d 1447 (7th Cir. 1996) ...............................................................................15

*Richardson v. Coverall N. Am., Inc.*,
    811 F. App'x 100 (3d Cir. 2020) ...................................................................20, 22

*Rue v. Kohler*,
    2006 WL 2051244 (N.J. Super. Ct. App. Div. July 25, 2006) ...........................16

*Schmidt v. Samsung Elecs. Am., Inc.*,
    2017 WL 2289035 (W.D. Wash. May 25, 2017) ...............................................24

*Shubert v. Wells Fargo Auto Fin., Inc.*,
    2008 WL 5451021 (D.N.J. Dec. 31, 2008)..........................................................26

*Siperavage v. Uber Techs., Inc.*,
    2021 WL 2680060 (D.N.J. June 30, 2021)..........................................................25

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010)...........................................................................25

*T-Mobile USA, Inc. v. Cellimports LLC*,
  2011 WL 111879 (D.N.J. Jan. 11, 2011)............................................16

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied-Indus. &
  Serv. Workers Loc. Union 943 v. E.I. DuPont de Nemours & Co.*,
  338 F. App'x 209 (3d Cir. 2009) ........................................................23

*Vasadi v. Samsung Elecs. Am., Inc.*,
  2021 WL 5578736 (D.N.J. Nov. 29, 2021) ................................*passim*

*Weichert Co. Realtors v. Ryan*,
  608 A.2d 280 (N.J. 1992) ..................................................................11

## Statutes

9 U.S.C. § 2...........................................................................................8

9 U.S.C. § 3......................................................................................9, 26

9 U.S.C. § 4......................................................................................9, 25

## Other Authorities

AAA Commercial Arbitration, Rule R-7(a) ...........................................22

**INTRODUCTION**

In *Vasadi v. Samsung Electronics America, Inc*., 2021 WL 5578736 (D.N.J. Nov. 29, 2021), this Court, applying well-established Third Circuit precedent, held that purchasers of Samsung smartphones were required to arbitrate their claims against Samsung because "the print materials provided to Plaintiffs with their . . . phone purchases establish—independently and certainly in combination— Plaintiffs had reasonably conspicuous notice of contract terms sufficient to support mutual assent to the Arbitration Agreement." *Id.* at *10.  The Court should reach the same result here.  Plaintiffs have brought a putative class action relating to Samsung's use of game optimization software in certain Samsung Galaxy smartphones.  Defendant Samsung Electronics America, Inc. ("Samsung") vigorously disputes Plaintiffs' allegations, but those allegations belong in arbitration, not federal court.  As in *Vasadi*, Samsung provided notice of its Arbitration Agreement on the outside of the boxes containing Plaintiffs' phones, on the inside of the boxes, and via an electronic activation process that Plaintiffs were required to complete before using their phones.  Plaintiffs accordingly agreed through the purchase and use of their phones that any dispute relating to those phones would be resolved through individual arbitration.  Samsung now moves to compel arbitration on an individual basis in accordance with Plaintiffs' agreement.

## STATEMENT OF FACTS

Plaintiffs allege that they purchased three models of Samsung Galaxy smartphones—Plaintiff Tracey Holland alleges that she purchased a Galaxy S10e in March 2021; Plaintiff Don Rowlett alleges that he purchased a Galaxy S21 5G in February 2021; and Plaintiff Virginia Erb Marquis alleges that she purchased a Galaxy S22+ in February 2022. ECF No. 1 ("Compl.") ¶¶ 13, 16, 19. Although Plaintiffs purchased different models than the Galaxy S20 phones that this Court considered in *Vasadi*, the packaging, documentation, and electronic setup process for the phones at issue here provided materially identical notice of Samsung's Terms and Conditions and Arbitration Agreement.

### A.    Plaintiffs' Receipt of Their Phones and Agreement to Arbitrate

Samsung provides conspicuous notice of the Terms and Conditions and Arbitration Agreement to consumers who purchase Galaxy S10e, S21 5G, and S22+ smartphones in multiple ways, including on the box, inside the box, and as part of the electronic setup process.

### 1.    *Notice of Arbitration Agreement on the box.*  All S10e, S21 5G, and S22+ smartphones sold in the United States are packaged in a box that, on the outside, notifies consumers in bold font that they "accept Samsung's Terms and Conditions, including an Arbitration Agreement," if they "use or retain" their phones. Certification of Nicole Cantwell ("Cantwell Cert.") ¶ 16; Ex. D. The box

2

provides a URL where consumers can find the full terms, including the full text of the Arbitration Agreement, before even opening the box.  *Id.* ¶ 16.  And the box states that the "Packaging Contains" the "Terms and Conditions."  *Id.* ¶¶ 19-21; Ex. D.

      **2.**    ***Notice of Arbitration Agreement in the box.***  When consumers open the boxes for their S10e, S21 5G, and S22+ smartphones, they encounter a booklet with the title "**Terms & Conditions / Health & Safety Information**," "**Terms & Conditions**," "**Terms and Conditions**," or "**Quick Start Guide and Terms & Conditions**" in large, bold font on the cover.  *Id.* ¶¶ 30-31, 33, 37-38, 40; Ex. E. The booklet's cover advises consumers to "Read this document before operating the mobile device."  *Id.* ¶¶ 31, 33, 37-38, 40.  Either on the cover page or at the beginning of the Terms and Conditions section, the booklet notifies consumers that it "contains important Terms and Conditions," and that "[e]lectronic acceptance, opening the packaging,[1] use, or retention of the Product constitutes acceptance of these Terms and Conditions."  *Id.* ¶¶ 31, 33, 38, 40.

      The booklets then again alert consumers to the Arbitration Agreement in a standalone paragraph:

> Arbitration Agreement - This Product is subject to a binding arbitration agreement between you and SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung").  You can opt out . . . within 30 calendar days of the first consumer purchase by emailing optout@sea.samsung.com or

---

[1] The S10e booklet refers to "Product packaging."  Cantwell Cert. ¶ 31.

calling 1-800-SAMSUNG (726-7864) and providing the applicable
information.

*Id.* ¶¶ 31, 34, 38, 40.  This language appears on the page following the Table of

Contents for the S10e; the page following the cover page for all S21 5G devices

and S22+ smartphones used with AT&T; and the first page of the booklet's Terms

& Conditions section, after a five-page Quick Start section, for other S22+ carriers.

*Id.*; Ex. E.  The booklets then provide the website URL that takes consumers

directly to the full Terms and Conditions.  *Id.* ¶¶ 31, 35, 39, 40.  The first thing

consumers see when they visit the website is bold text, visible without scrolling,

notifying them of the Arbitration Agreement.  *Id.* ¶¶ 23, 24, 26, 28; Ex. A; Ex. B.

Ex. C.  Consumers can click a bubble next to the words "Arbitration Agreement,"

or a hyperlink, to see its full terms.  *Id.* ¶¶ 24, 26, 28.

       **3.**     ***Electronic notice of Arbitration Agreement during setup process.***

Consumers receive notice of the Arbitration Agreement in yet a third way, through

a clickwrap agreement—an electronic setup process that requires them to

affirmatively accept Samsung's Terms and Conditions, including the Arbitration

Agreement, in order to activate and use their phones.  *Id.* ¶¶ 42-44.  Plaintiffs could

not complete the setup process and start using their phones until they clicked the

bubble to expressly accept Samsung's Terms and Conditions, including the

Arbitration Agreement.  *Id.* ¶¶ 43-44.  The S10e and S21 5G smartphones present

consumers with an interactive screen that includes a hyperlink to the Terms and

Conditions with a bubble next to it, as well as a bubble next to the words "I have read and agree to all of the above," when they turn on their phones for the first time. *Id.* ¶¶ 45-46. They must click one of the bubbles in order to complete the setup of their phones. *Id.* Similarly, the S22+ setup process requires consumers to click a bubble next to "I agree to the Terms and Conditions, including the Arbitration Agreement," or "Agree to all (optional)" when they turn on their phones for the first time. *Id.* ¶ 47. Screenshots for the S10e, S21 5G, and S22+, respectively, are below:

  

*Id.* ¶¶ 45-47.

If Plaintiffs had clicked on the hyperlink to the Terms and Conditions, they would have seen a scrollable screen showing the Terms and Conditions, starting with the Arbitration Agreement. *Id.* ¶¶ 48-49.  And the Terms and Conditions and Arbitration Agreement also remain accessible on Plaintiffs' devices at all times, at a location described in the in-box Terms and Conditions booklet. *Id.* ¶¶ 50-51.

**4.    *Substance of the Arbitration Agreement.*** The substance of the Arbitration Agreement is materially identical to the one in *Vasadi*.[2]  The first paragraph of the Arbitration Agreement reiterates in bold or all-capitalized text that "[t]his is a binding legal agreement ('Agreement') between you" and "Samsung," and that "[e]lectronic acceptance of the agreement, opening the product packaging, use of the product, or continued possession[3] of the product constitutes acceptance of" the Agreement. *Id.* ¶ 9.

The second paragraph then sets forth a broad provision requiring arbitration of all disputes relating to Plaintiffs' phones:

> You and Samsung each agree that all disputes between you and Samsung relating in any way to or arising in any way from the standard limited warranty or the sale, condition or performance of the product

[2] As described in the Cantwell Certification, Samsung made some minor wording changes to the Arbitration Agreement over the period when Plaintiffs purchased their phones, but none are material to this motion.  *See* Cantwell Cert. ¶ 10 & nn.2-4.  All three relevant versions of the Arbitration Agreement are attached to the Cantwell Certification; this motion describes text common to all three versions, unless otherwise noted.  *See id.* ¶¶ 25, 27, 29; Ex. A; Ex. B; Ex. C.

[3] The September 1, 2019 Agreement uses "retention" instead of "continued possession."  *See* Cantwell Cert. ¶ 9 n.1; Ex. A at 7.

> shall be resolved exclusively through final and binding arbitration, and
> not by a court or jury.

*Id.* ¶ 10; Ex. A at 6; Ex. B at 2; Ex. C at 2.  Next, the Agreement sets forth a class

action waiver:

> Any such dispute shall not be combined or consolidated with a dispute
> involving any other person's or entity's product or claim. Specifically,
> without limitation of the foregoing, you shall not under any
> circumstances proceed as part of a class action.[4]

*Id.* ¶ 10; Ex. A at 6; Ex. B. at 2; Ex. C at 2.

The Agreement further provides that "arbitration shall be conducted

according to the American Arbitration Association (AAA) Commercial Arbitration

Rules applicable to consumer disputes" and states that "[t]he arbitrator shall decide

all issues of interpretation and application" of this Agreement.  *Id.* ¶ 11; Ex. A at 6;

Ex. B at 2; Ex. C at 2.

The Arbitration Agreement then again notifies consumers that they can opt

out within 30 days, provides the methods for doing so, and explains that opting out

is without penalty and "will not affect in any way the benefits to which you would

otherwise be entitled, including the benefits of the Standard Limited Warranty."

*Id.* ¶ 13; Ex. A at 7; Ex. B at 3; Ex. C at 3.  Plaintiffs here do not allege that they

opted out of the Arbitration Agreement.  Samsung's records identifying customers

---

[4] The September 1, 2019 Agreement combines the two sentences.  Cantwell Cert.
¶ 10 n.4; Ex. A at 7.

who called or emailed to timely opt out confirm that Plaintiffs did not do so.  *Id.*

¶ 14.

### B.      Plaintiffs' Complaint

Plaintiffs filed their Complaint on March 11, 2022, alleging that Samsung

has installed software on its phones that extends battery life and prevents

overheating by limiting the use of processing power in certain applications.

Compl. ¶¶ 1-6.  Plaintiffs assert various claims under state consumer protection,

fraud, and implied warranty law on the theory that they "would not have purchased

and/or are paying a significant price premium" for their phones.  *Id.* ¶ 7.  They seek

certification of a putative nationwide class of all purchasers of the S10, S20, S21,

and S22 models of Galaxy smartphones, along with New Jersey, Texas, and

Virginia state subclasses.  *Id.* ¶¶ 56-134.

### ARGUMENT

### I.      Plaintiffs Entered into a Binding Agreement to Arbitrate the Claims They Are Asserting Against Samsung

Under the Federal Arbitration Act ("FAA"), arbitration provisions "shall be

valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects a

"liberal federal policy favoring arbitration," and courts must "enforce[] [arbitration

agreements] as written."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630, 1632

(2018) (quotation marks omitted).  A party to a written arbitration agreement may

petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement," and the court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. §§ 3, 4.

The FAA requires courts to compel arbitration if (i) a valid agreement to arbitrate exists, and (ii) the dispute falls within the scope of that agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 527 (3d Cir. 2009). However, to the extent the arbitration agreement "clear[ly] and unmistakabl[y]" submits the "arbitrability question itself" to the arbitrator, the court stops at the first step, and the arbitrator decides whether a particular dispute falls within the scope of the agreement. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995); *see also Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 304 n.17 (3d Cir. 2016).

When Plaintiffs retained and used their phones, they agreed to Samsung's Terms and Conditions, including the Arbitration Agreement. The packaging and documentation for Plaintiffs' phones, as well as the electronic setup process, were identical in all material respects to the Galaxy S20 phones at issue in *Vasadi*, where this Court correctly compelled arbitration on the basis of well-established Third Circuit and New Jersey precedent. The Arbitration Agreement "clearly and unmistakably" submits questions about the scope of arbitration to the arbitrator,

meaning this Court should order arbitration after determining that the agreement is binding.  In any event, if this Court were to proceed to step two and assess whether the dispute here falls within the scope of the Arbitration Agreement, the Court should conclude that it plainly does.

### A.   Contract Formation Requires Reasonable Notice of the Terms and Conditions and of the Manner of Acceptance

The question of whether a plaintiff agreed to arbitrate is governed by "ordinary state-law principles that govern the formation of contracts."  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *First Options*, 514 U.S. at 944).  Plaintiffs filed their lawsuit in New Jersey, and purchased and used their devices in New Jersey, Texas, and Virginia.  Compl. ¶¶ 12-20.  Under New Jersey's choice-of-law principles, New Jersey law applies unless there is a "true conflict" with other potentially applicable state laws governing contract formation.  *Frederick v. L. Off. of Fox Kohler & Assocs. PLLC LLC*, 852 F. App'x 673, 676 (3d Cir. 2021).  Here, as in *Vasadi*, there is "no conflict between the law of contract formation in the Plaintiffs' respective home states and the law of the forum state, New Jersey," and so New Jersey law applies. 2021 WL 5578736, at *7.[5]

_____

[5] *See Vasadi*, 2021 WL 5578736, at *7 (finding no conflict between New Jersey and Virginia contract formation law); *Beture v. Samsung Elecs. Am., Inc.*, 2018 WL 4621586, at *3, *5 (D.N.J. July 18, 2018) (finding "no conflict between applying New Jersey, Texas, and New York substantive law to contract

"Under New Jersey law, an enforceable contract requires offer and acceptance, consideration, a meeting of the minds, and sufficiently definite terms." *Vasadi*, 2021 WL 5578736, at *8. Establishing a meeting of the minds and mutual assent turns on the existence of "reasonable notice to each contracting party of the contractual terms." *Noble v. Samsung Elecs. Am., Inc*, 682 F. App'x 113, 116 (3d Cir. 2017). "[F]or a party to have reasonable notice, the writing must 'appear to be a contract' and 'be called to the attention of the recipient.'" *Vasadi*, 2021 WL 5578736, at *8 (quoting *Noble*, 682 F. App'x at 116). "Assent to a contract's terms may be manifested expressly, that is, by written or spoken word, or implicitly by conduct." *Id.* (citing *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 285 (N.J. 1992)).

As the Second Circuit has put it, the "touchstone of the analysis is whether reasonable people in the position of the parties"—here, "a reasonably prudent smartphone user"—"would have known about the terms and the conduct that would be required to assent to them." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77 (2d Cir. 2017) (citation and quotation marks omitted). Ultimately, an arbitration clause is binding as long as "the terms or a hyperlink to the terms are reasonably conspicuous." *James v. Glob. TelLink Corp.*, 852 F.3d 262, 267 (3d Cir. 2017).[6]

_____

formation").

[6] Virginia and Texas law recognize these same core principles. *See, e.g.*, *HomeAdvisor, Inc. v. Waddell*, 2020 WL 2988565, at *4 (Tex. App. June 4, 2020);

**B.** **Samsung Provided Reasonable Notice of the Arbitration Agreement, and Plaintiffs Assented to that Agreement, in Three Independently Sufficient Ways**

Longstanding precedent from the Third Circuit, courts in this District, and across the country confirms that enforceable contracts may be formed in the context of consumer electronics purchases by at least three independent methods: (i) shrinkwrap agreements where notice of the terms and the means of acceptance is provided on the outside of the box; (ii) inside-the-box agreements where notice is provided in documentation inside the box; or (iii) clickwrap agreements where notice is provided electronically and users assent to terms and conditions by clicking a box or button.  Each applies here.  Plaintiffs received reasonable notice of the Terms and Conditions, including the Arbitration Agreement, in all three ways, any of which is independently sufficient to establish assent to arbitration.

**1.** **Plaintiffs Entered Into Valid Shrinkwrap Arbitration Agreements**

In shrinkwrap cases, "notice of contractual terms is provided on the exterior physical packaging containing the product," "which consumers are deemed to accept by opening or using the products." *Vasadi*, 2021 WL 5578736, at *9 (citing *James*, 852 F.3d at 267, and *Noble*, 682 F. App'x at 117).  As *Vasadi* held, the law permitting shrinkwrap contract formation is "well-established." *Id.*  The Third Circuit has explained that, so long as the notice on the product packaging is

---

*Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 696 (E.D. Va. 2020).

reasonably conspicuous, consumers' "subsequent use of the products manifest[s] assent to the enclosed terms." *James*, 852 F.3d at 267; *see also Noble*, 682 F. App'x at 117 (recognizing that shrinkwrap agreements may be formed where the box or cover of the document containing the arbitration agreement includes "language indicating that bilateral contractual terms or conditions are inside").

These types of agreements are now ubiquitous, and reasonable consumers "should (and must) know that vendors will often employ a 'simple approve-or-return' model, enclosing their full legal terms with a product at shipment." *Dye v. Tamko Bldg. Prods., Inc.*, 908 F.3d 675, 683 (11th Cir. 2018). Thus, as the Eleventh Circuit put it, "modern consumers are on notice that products come with warranties and other terms and conditions of purchase. And they are free to research (or not), request (or not), and read (or not) those terms before unwrapping their purchases." *Id.* But the law "makes clear that providing conspicuously printed product packaging is an OK way to convey purchase terms," and that "consumers who purchase, open, and retain a product are thus bound in accordance" with the terms on the packaging, "whether they actually take the time to read them or not." *Id.* at 683-84.

The boxes containing Plaintiffs' S10e, S21 5G, and S22+ smartphones provided sufficient notice of Samsung's Terms and Conditions to establish an enforceable agreement to arbitrate. *Supra* at 2-3. The boxes "drew attention to the

13

existence of contractual terms by stating, in bold print: 'Packaging Contains . . . Terms and Conditions.'" *Vasadi*, 2021 WL 5578736, at \*9; *cf.* Cantwell Cert. ¶¶ 18-21; Ex. D. "More important, and leaving no room for ambiguity, the box label made express reference to an arbitration agreement, provided the location where full terms could be accessed and advised the consumer that certain, identified actions"—namely, retaining or using the phones—"would constitute assent to those terms, all under a capitalized and bold heading reading 'IMPORTANT INFORMATION.'" *Vasadi*, 2021 WL 5578736, at \*9; *cf.* Cantwell Cert. ¶¶ 17-21; Ex. D. "The label further informs consumers where they may review full terms of the agreement and obtain information about how to opt out." *Vasadi*, 2021 WL 5578736, at \*9; *cf.* Cantwell Cert. ¶¶ 17-22; Ex. D. "The notice provided is not only conspicuous, but also provides consumers a reasonable opportunity to review the Arbitration Agreement and consider whether to take an affirmative act negating assent to the terms of purchase." *Vasadi*, 2021 WL 5578736, at \*9.

The label on each of Plaintiffs' phones thus "contained all the features of valid shrinkwrap agreements" under New Jersey law. *Id.* The label provided "conspicuous notice of [Samsung's] offer—something a reasonable, objective person would understand as an invitation to contract," and "opening and retaining

14

the [phones] was the (quite ordinary, reasonable) conduct from which [Plaintiffs'] assent can be inferred." *Dye*, 908 F.3d at 681.

> **2.    Plaintiffs Entered Into Valid Arbitration Agreements Based on the Notice Inside the Box with Their Phones**

Separately, the "Terms and Conditions" booklet "contained in the Galaxy [S10e, S21 5G, and S22+] box provides an additional and independent basis for finding that Plaintiffs had reasonable notice of the Arbitration Agreement." *Vasadi*, 2021 WL 5578736, at *10 (citing *Noble*, 862 F. App'x at 116-17).

Courts routinely enforce agreements where the consumer receives notice of terms inside the product packaging and the consumer can return the product or opt out of arbitration after having had an opportunity to review the terms. "In these cases," the Third Circuit has explained, "terms are typically provided inside the packaging, and consumers are deemed to accept those terms by opening or using the products," and declining to "reject them by returning the product" or opting out. *See James*, 852 F.3d at 267 (citing *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir. 1996)); *see, also, e.g.*, *Noble*, 682 F. App'x at 117 (explaining that arbitration agreement in terms and condition booklet would have been enforceable if the "outside" of the booklet "include[d] . . . language indicating that bilateral contractual terms or conditions are inside"); *Vasadi*, 2021 WL 5578736, at *10.

Thus, for example, in *Kowalski v. YellowPages.com, LLC*, a court in this District applying New Jersey law explained that "a purchaser is bound by the terms

15

located inside a product packaging which are accessible after the sale has been consummated."  2010 WL 3323749, at *4-5 (D.N.J. Aug. 18, 2010).  Likewise, in *T-Mobile USA, Inc. v. Cellimports LLC*, the court held that "the Terms and Conditions and the language on the packaging" accompanying prepaid T-Mobile phones "constitute[d] a valid binding contract enforceable against" the purchasers of those phones.  2011 WL 111879, at *2 (D.N.J. Jan. 11, 2011).  *T-Mobile* held that the terms and conditions were binding because they were "referenced in printed warnings that are placed on the outside of the retail packaging" of the phones, were "set forth in printed inserts that are included in the packaging" with the phones, and were "available to the public on T-Mobile's website."  *Id.*[7]

The booklets that came in the box with Plaintiffs' S10e, S21 5G, and S22+ smartphones provided sufficient notice indicating that "bilateral contractual terms or conditions are inside" to establish an enforceable agreement to arbitrate.  *Noble*, 682 F. App'x at 117.  The cover pages for all of the booklets identify them as containing "Terms and Conditions," "words that are unambiguously associated with contracts."  *Vasadi*, 2021 WL 5578736, at *10; *see* Cantwell Cert. ¶¶ 30-31,

---

[7] *See also, e.g.*, *Rue v. Kohler*, 2006 WL 2051244, at *3 (N.J. Super. Ct. App. Div. July 25, 2006) (enforcing terms that "were recited on a document inside the box with the product"); *In re Samsung Elecs. Am., Inc. Blu-Ray Class Action Litig.*, 2008 WL 5451024, at *4 n.5 (D.N.J. Dec. 31, 2008) ("[V]arious courts have approved the inclusion of licenses, additional warranties and limitations, and other contractual terms on the inside of product packaging.").

33, 37-38, 40; Ex. E.  The booklets then advise that the terms and conditions will be deemed accepted if consumers retain or use their phones, or if they accept the terms electronically.  Cantwell Cert. ¶¶ 31, 33, 38, 40.  This language appears either on the cover of the booklet or, for certain S22+ booklets that combine a five-page Quick Start section with the Terms and Conditions, at the start of the Terms and Conditions section.  *Id.*  And consumers who flip open the booklets will immediately encounter "notice of the arbitration provision, its binding nature, the location where full terms may be accessed, and the consumer's right to opt out within a reasonable period."  *Vasadi*, 2021 WL 5578736, at *10; *see* Cantwell Cert. ¶¶ 31, 34-35, 38-40; Ex. E.

Plaintiffs accordingly accepted Samsung's Terms and Conditions when they retained and used their phones.  The S10e, S21 5G, and S22+ Terms and Conditions booklets "make[] the contractual nature of the document obvious and bring[] the arbitration clause to the forefront."  *Vasadi*, 2021 WL 5578736, at *10.  Under such circumstances, reasonable consumers would understand that "their subsequent use of the products manifest[s] assent to the enclosed terms."  *James*, 852 F.3d at 267.

### 3.      Plaintiffs Entered Into Valid Arbitration Agreements Through the Clickwrap Process During Device Activation

Finally, Plaintiffs independently agreed to the Terms and Conditions, including the Arbitration Agreement, when they clicked to accept those terms as part of the phone activation process.

It is well-established that users manifest assent to form valid arbitration agreements when, presented with terms and conditions that include an arbitration agreement, they affirmatively click a box indicating that they agree to the terms. *See Meyer*, 868 F.3d at 75-76.  "Courts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract, and that [t]here is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement."  *Id.* at 75 (alterations in original) (quotation marks omitted).  As the Second Circuit observed, such "clickwrap agreements," which "require users to click an 'I agree' box after being presented with a list of terms and conditions of use," are "routinely uph[e]ld" by courts "for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"  *Id.*

New Jersey courts routinely enforce clickwrap agreements.  "Under New Jersey law, when a party . . . click[s] on a button signifying his acceptance of terms and conditions in connection with a[] . . . transaction, he thereby manifests his

18

assent to an electronic agreement." *Beture v. Samsung Elecs. Am., Inc.*, 2018 WL 4621586, at *5 (D.N.J. July 18, 2018) (quotation marks omitted).  "As a result, '[n]umerous courts, including courts in the Third Circuit, have enforced clickwrap agreements.'"  *Id.* (alteration in original) (quoting *ADP, LLC v. Lynch*, 2016 WL 3574328, at *4 (D.N.J. June 30, 2016), *aff'd*, 678 F. App'x 77 (3d Cir. 2017)); *see also Vasadi*, 2021 WL 5578736, at *10 (recognizing that "[c]lickwrap agreements have been upheld as binding under New Jersey law, including under circumstances like those presented in this case").[8]

Here, when Plaintiffs turned on their phones for the first time, they were presented with screens requiring them to acknowledge agreement to the hyperlinked Terms and Conditions before they could complete the device setup process and use their phones.  Cantwell Cert. ¶¶ 45-49.  Plaintiffs clicked the

---

[8] *See also, e.g.*, *Mucciariello v. Viator, Inc.*, 2019 WL 4727896, at *6 (D.N.J. Sept. 27, 2019) (online agreements "have been found to be enforceable under New Jersey law, when the pertinent terms and provisions are hyperlinked, and the user must perform an action to provide assent, such as, for example, clicking on a button"); *Horowitz v. AT&T Inc.*, 2019 WL 77331, at *9 (D.N.J. Jan. 2, 2019) ("Plaintiffs accepted the terms of the Arbitration Agreement by receiving notice of the agreement, clicking on the link, and failing to opt out within the deadline."); *Davis v. Dell, Inc.*, 2007 WL 4623030, at *4 (D.N.J. Dec. 28, 2007) ("Under both New Jersey and Texas law, when a party uses his computer to click on a button signifying his acceptance of terms and conditions in connection with an online transaction, he thereby manifests his assent to an electronic agreement."), *aff'd*, 2008 WL 3843837 (D.N.J. Aug. 15, 2008).

bubbles acknowledging their agreement, proceeded with activating and using their phones, and failed to opt out of arbitration within 30 days.  *Id.* ¶¶ 14, 49.

Plaintiffs accordingly assented to arbitration whether or not they clicked on the hyperlink containing the full terms.  Clickwrap agreements are enforceable even where they "d[o] not physically require the signatory to actually review the terms before assenting to them."  *ADP*, 2016 WL 3574328, at *4; *Meyer,* 868 F.3d at 79 (user is bound whether or not he or she "bother[s] reading the additional terms"); *Beture*, 2018 WL 4621586, at *6.

Plaintiffs accordingly expressly manifested assent to the Terms and Conditions, including the Arbitration Agreement, and formed a valid and binding agreement to arbitrate with Samsung.

* * * * *

In sum, Samsung provided notice of the Terms and Conditions everywhere a reasonable consumer might be expected to look, in at least three separate and conspicuous ways.  Plaintiffs had an opportunity to return their phones or opt out of the Arbitration Agreement, but did not do so.  New Jersey law is clear:  the parties formed a binding agreement to arbitrate claims arising in any way from Samsung's warranty or the sale, condition, or performance of Plaintiffs' phones.

C. **The Agreement Assigns Questions of Scope to the Arbitrator, But in Any Event, the Claims Fall Within the Scope of the Arbitration Agreement**

If this Court concludes that Plaintiffs formed an agreement to arbitrate with Samsung, the Court should order arbitration without addressing the scope of that agreement. Because the "agreement shows the intent to delegate the arbitrability" question, the arbitrator, not the Court, decides the scope of the Agreement. *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 104 (3d Cir. 2020); *see Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *Vasadi*, 2021 WL 5578736, at *7. Regardless, Plaintiffs' claims fall comfortably within the scope of the Agreement.

1. **The Arbitration Agreement Assigns Questions of Arbitrability, Including Scope, to the Arbitrator**

The parties clearly agreed to arbitrate questions of arbitrability, including the scope of the Arbitration Agreement. *First*, the Arbitration Agreement provides that "[t]he arbitrator shall decide all issues of interpretation and application" of the Agreement. Cantwell Cert. ¶ 11. *Vasadi*, for example, interpreted this same arbitration provision to "unambiguously delegate[] the arbitrator the authority to decide issues concerning the interpretation and/or scope of the Arbitration Agreement." 2021 WL 5578736, at *7. And courts within this District and elsewhere have repeatedly interpreted materially identical provisions to direct questions of an arbitration agreement's scope to the arbitrator. *E.g.*, *Beture*, 2018

21

WL 4621586, at *10 (interpreting language stating that the "arbitrator shall decide all issues of interpretation and application of this arbitration provision" to "clearly and unmistakably delegat[e] arbitrability to the arbitrator"); *Air Line Pilots Ass'n, Int'l v. Midwest Exp. Airlines, Inc.*, 279 F.3d 553, 556 (7th Cir. 2002) (language stating that "all issues concerning the interpretation and application of the agreement are for the arbitrators to decide" delegates arbitrability to the arbitrator); *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 406 n.4 (S.D.N.Y. 2016) (similar); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198-99 (2d. Cir. 1996) (similar).

*Second*, the Arbitration Agreement expressly incorporates the rules of the American Arbitration Association ("AAA"), Cantwell Cert. ¶ 11, which provide that the arbitrator decides objections relating to "the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," AAA Commercial Arbitration, Rule R-7(a).  "That provision 'is about as clear and unmistakable as language can get'" in showing a delegation of arbitrability questions to the arbitrator.  *Richardson*, 811 F. App'x at 103 (quoting *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009)); *Vasadi*, 2021 WL 5578736, at *7 (holding that same Samsung arbitration agreement at issue here delegates arbitrability to the arbitrator "by incorporating the AAA rules").[9]

---

[9] *See also, e.g.*, *Neal v. Asta Funding, Inc.*, 2016 WL 3566960, at *14 (D.N.J. June

Accordingly, this Court should order arbitration and stay the proceedings without reaching the question of whether the Arbitration Agreement covers the claims in the Complaint.

### 2. Plaintiffs' Claims Fall Within the Arbitration Agreement's Scope

Ultimately, however, it is academic whether the Arbitration Agreement assigns questions of scope to the arbitrator, because Plaintiffs' claims fall squarely within the scope of the Agreement.

"The Supreme Court has instructed that the presence of an arbitration clause in a contract creates a presumption that a grievance is arbitrable 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied-Indus. & Serv. Workers Loc. Union 943 v. E.I. DuPont de Nemours & Co.*, 338 F. App'x 209, 213 (3d Cir. 2009) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). "The

---

30, 2016) ("By agreeing to arbitrate in accordance with AAA rules, the parties to the ITS Agreement clearly and unmistakably agreed to arbitrate the issue of arbitrability."); *Bapu Corp. v. Choice Hotels Int'l, Inc.*, 2008 WL 4192056, at *4 (D.N.J. Sept. 8, 2008) ("The parties' agreement to arbitrate any contract disputes under th[e] [AAA] Commercial Arbitration Rules thus includes an agreement to submit the question of arbitrability to the arbitrator."), *aff'd*, 371 F. App'x 306 (3d Cir. 2010).

presumption in favor of arbitrability applies with particular force when an arbitration clause is broad."  *Id.* (quotation marks omitted).

The Arbitration Agreement here is one such "broad" clause:  it binds Plaintiffs to arbitrate individually "all disputes between you and Samsung that *in any way* relate to, or arise from, the standard limited warranty; or the sale, condition, or performance of the product."[10]  Cantwell Cert. ¶ 10 (emphasis added). The Agreement thus presumptively covers Plaintiffs' claims.  But even putting that presumption aside, those claims fall within the scope of the Agreement.  Plaintiffs allege that their phones have a "defect" that prevents consumers from "getting the full advertised performance of their phones," and allege that they would not have purchased or would have paid less for their phones had they known.  Compl. ¶ 7. Such claims relate to, and arise from, the sale, condition, or performance of the product.[11]

---

[10] The September 1, 2019 Agreement says "relating in any way to or arising in any way from" instead of "that in any way relate to, or arise from."  Cantwell Cert. ¶ 10 n.2; Ex. A at 7.

[11] Plaintiffs name SEA's parent company, Samsung Electronics Co., Ltd. ("SEC"), as a defendant, but have not served SEC.  If SEC were timely and properly served, the Arbitration Agreement would mandate arbitration of Plaintiffs' claims against SEC to the same extent as the claims against SEA.  The Arbitration Agreement expressly applies to claims against SEA's "parents and other affiliates."  *See* Cantwell Cert. ¶ 12; *see also, e.g.*, *Schmidt v. Samsung Elecs. Am., Inc.*, 2017 WL 2289035, at *7 (W.D. Wash. May 25, 2017); *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1288, 1304 (N.D. Cal. 2018).

## II.    The Court Should Dismiss Plaintiffs' Class Claims

In addition to agreeing to arbitrate their own claims against Samsung, Plaintiffs also agreed that "[a]ny such dispute shall not be combined or consolidated with a dispute involving any other person's or entity's product or claim" and that any dispute "shall not under any circumstances proceed as part of a class action."  Cantwell Cert. ¶ 10.  Plaintiffs' agreement not to proceed as part of a class action is valid and binding, and the Court should enforce that agreement by dismissing the class claims with prejudice.

The FAA requires courts to enforce arbitration agreements "in accordance with the terms thereof."  9 U.S.C. § 4.  The Supreme Court has repeatedly enforced class waivers in arbitration agreements functionally the same as the one here.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341-44 (2011); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234-35 (2013).  In fact, the Supreme Court has held that a court "may not compel arbitration on a classwide basis" even "when an agreement is 'silent' on the availability of such arbitration."  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)).  A fortiori here, where the agreement expressly prohibits class actions, the Court must dismiss the class claims and compel individual arbitration.

Indeed, the Third Circuit and courts in this District regularly enforce class waivers in arbitration agreements and require plaintiffs to proceed individually in arbitration.  *See, e.g.*, *Litman v. Cellco P'ship*, 655 F.3d 225, 231 (3d Cir. 2011) (holding that an arbitration clause that "requires individual arbitration and forecloses class arbitration" must "be enforced according to its terms"); *Vasadi*, 2021 WL 5578736, at *13 (enforcing class waiver in same Samsung arbitration agreement at issue here); *Siperavage v. Uber Techs., Inc.*, 2021 WL 2680060, at *5 (D.N.J. June 30, 2021); *Coiro v. Wachovia Bank, N.A.*, 2012 WL 628514, at *6-7 (D.N.J. Feb. 27, 2012); *Shubert v. Wells Fargo Auto Fin., Inc.*, 2008 WL 5451021, at *8 (D.N.J. Dec. 31, 2008).

## III.    The Court Should Stay Proceedings Pending Arbitration

In addition to compelling arbitration of Plaintiffs' individual claims and dismissing their class claims, this Court should stay all further proceedings in this litigation pending arbitration.  The FAA provides that, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3 (emphasis added).  Under Third Circuit precedent, if any party requests a stay, the "[c]ourt [is] obligated under 9 U.S.C. § 3 to grant the stay

once it decide[s] to order arbitration," and lacks discretion to dismiss the case outright.  *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004); *see also, e.g.*, *Vasadi*, 2021 WL 5578736, at *12 ("Pursuant to Section 3 of the FAA, the action must be stayed as to the claims brought by the Plaintiffs who are bound by the Arbitration Agreement.").

## CONCLUSION

For the reasons set forth above, Samsung respectfully requests that the Court (i) order Plaintiffs to submit their individual claims to binding arbitration, (ii) dismiss Plaintiffs' class claims, and (iii) stay this action pending the outcome of any such arbitrations in accordance with the plain and unambiguous terms of Plaintiffs' agreement.

DATED: May 20, 2022

**ARNOLD & PORTER KAYE SCHOLER LLP**

By:   *s/ Anand Agneshwar*

Anand Agneshwar
Lori B. Leskin
250 West 55th Street
New York, NY 10019-9710
Tel.: 212.836.8000
Fax: 212.836.8689
Anand.Agneshwar@arnoldporter.com
Lori.Leskin@arnoldporter.com

Elisabeth S. Theodore (*pro hac vice forthcoming*)

27

601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel.: 202.942.5000
Fax: 202.942.5999
Elisabeth.Theodore@arnoldporter.com

*Attorneys for Defendant Samsung
Electronics America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify, that on May 20, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

DATED this 20th day of May, 2022.

*s/ Anand Agneshwar*